# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE GONZALEZ, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>HARRIS RANCH BEEF COMPAY, et al.,<br><br>Defendants. | Case No.  1:14-cv-00038-LJO-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT BE GRANTED<br><br>ECF NO. 58<br><br>OBJECTIONS DUE WITHIN FOURTEEN (14) DAYS |

On January 21, 2015, Plaintiff Jose Gonzalez ("Plaintiff") filed a motion for preliminary approval of a class action settlement.  (ECF No. 58.)  Plaintiff's motion is unopposed.

The Court finds it appropriate for Plaintiff's motion to be submitted upon the records and briefs on file without the need for oral argument.  Accordingly, the Court will vacate the hearing scheduled for February 25, 2015.  For the reasons set forth below, the Court recommends that the motion for preliminary approval be granted.

**I.**

**BACKGROUND**

Plaintiff initiated this action on December 4, 2013 in the Superior Court of California for the County of Fresno.  The action was removed to this Court on January 10, 2014.  (ECF No. 2.)

/ / /

1

Plaintiff brought suit against Defendant on behalf of himself and others similarly situated. Plaintiff brought suit under the Fair and Accurate Credit Transaction Act ("FACTA"), alleging that Defendant printed the credit card and debit card expiration dates on customers' receipts for purchases made at Defendant's restaurant and country store in Coalinga, California. Plaintiff defines the class in this action as:

> All persons in the United States to whom, through use of a machine used by Defendants, were provided with an electronically printed receipt at the point of a sale or transaction on which the expiration date of the person's credit or debit card was printed since the date five years prior to the filing of this Action.

The motion for preliminary approval states that between December 4, 2008 and December 4, 2013, it is estimated that approximately 281,242 allegedly defective receipts were generated which did not properly truncate customers' credit card and debit card expiration dates.

The parties have agreed to settle the matter for $185,000, without reversion or discount. Defendant also agreed to remedy the issue. Class members who submit valid and timely claims will receive a pro rata payment from the settlement fund, up to $250 per member.

## II.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 23(e) states:

> (e)   Settlement, Voluntary Dismissal, or Compromise. The claims, issues or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:
> (1)   The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
> (2)   If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.
> (3)   The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.
> (4)   If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.
> (5)   Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

Rule 23 "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998) (citing Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992)). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." Id. (citing Officers for Justice v. Civil Serv. Comm'n of San Francisco, 688 F.2d 615, 628 (9th Cir. 1982)).

"Assessing a settlement proposal requires the district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." Hanlon, 150 F.3d at 1026 (citing Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1375 (9th Cir. 1993)). "To survive appellate review, the district court must show it has explored comprehensively all factors." Id.

Moreover:

> Several circuits have held that settlement approval that takes place prior to formal class certification requires a higher standard of fairness. The dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court designated class representative, weigh in favor of a more probing inquiry than may normally be required under Rule 23(e).... Because settlement class actions present unique due process concerns for absent class members, we agree with our sister circuits and adopt this standard as our own.

Hanlon, 150 F.3d at 1026.

## III.

## DISCUSSION

### A.  Class Certification

When the parties seek approval of a proposed class action settlement, the Court must "ascertain whether the proposed settlement class satisfies the requirements of Rule 23(a) of the Federal Rules of Civil Procedure applicable to all class actions, namely: (1) numerosity, (2)

3

commonality, (3) typicality, and (4) adequacy of representation." Hanlon, 150 F.3d at 1019 (citing Amchem Products, Inc. v. Windsor, 521 U.S. 591, 613 (1997)). Courts "must pay 'undiluted, even heightened, attention' to class certification requirements in a settlement context." Id. (quoting Amchem Products, Inc., 521 U.S. at 620).

In this case, Plaintiffs seek certification of a class under Federal Rule of Civil Procedure 23(b)(3), which requires a demonstration that questions of law or fact common to class members predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Further:

> Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficient numerous parties, common questions of law or fact, etc. We recognized in Falcon that "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question," [citation] and that certification is proper only if "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied, [citation]."

Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011) (italics in original). In other words, Plaintiffs' must *prove*, with supporting evidence, that the class certification requirements are met in this action.

### 1. Numerosity

The numerosity requirement is satisfied where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The motion indicates that between December 4, 2008 and December 4, 2013, Defendant generated approximately 281,242 allegedly defective receipts, which is estimated to involve more than 100,000 potential class members.

It is unclear how Plaintiffs calculated these numbers. The only evidence submitted by Plaintiffs in support of their motion is the declaration of Daniel F. Gaines, attorney for Plaintiffs. Mr. Gaines professes no personal knowledge of Defendant's business practices pertaining to their recordkeeping or the issuance of receipts for purchases. Accordingly, Mr. Gaines' testimony regarding the number of receipts issued, whether they were defective, and how many

different customers were involved, is inadmissible.

There is no admissible evidence regarding the cause of any defect relating to the receipts or whether the expiration date was printed on all receipts printed by Defendant or some subset of receipts. However, at this stage in litigation, the Court is satisfied that the numerosity requirement is satisfied for preliminary settlement purposes. Prior to final settlement, the Court expects the parties to submit admissible evidence from witnesses with personal knowledge of the facts which demonstrates the scope of the receipt issue and how the estimates provided were calculated.

### 2. Commonality

The commonality requirement is satisfied where "there are questions of law or fact that are common to the class." Fed. R. Civ. P. 23(a)(2). However, "[a]ll questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Hanlon, 150 F.3d at 1019.

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011) (quoting General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 157 (1982)). "This does not mean merely that they have all suffered a violation of the same provision of law." Id. "Their claims must depend upon a common contention.... That common contention, moreover, must be of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." Id.

In this case, Plaintiff alleges that all class members suffered the same injury, namely the fact that the receipt for their purchases displayed the expiration dates for their credit cards or debit cards. As noted above, Plaintiff has not submitted admissible evidence regarding the details of the receipt issue, accordingly it is unclear if all class members suffered the same injury or some subset of class members suffered the same injury, i.e., it is unclear if all receipts improperly printed the expiration date for the credit card/debit card used, or if it only occurred on

some subset of receipts. However, at this preliminary stage the Court is satisfied that the commonality requirement is met, with the expectation that the parties submit additional evidence prior to final settlement.

### 3. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class[.]" This does not require the claims to be substantially identical, but that the representatives claims be "reasonably co-extensive with those of the absent class members." Hanlon, 150 F.3d at 1020.

In this case, Plaintiff alleges that he received a printed receipt at the point of sale when purchasing something from Defendant, which is identical to the claim brought on behalf of all other class members. Accordingly, the Court is satisfied at this stage that Plaintiff's claims are typical of the claims of the class.

### 4. Adequacy of Representation

The named plaintiffs must fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). In determining whether the named plaintiffs will adequately represent the class, the courts must resolve two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Hanlon, 150 F.3d at 1020. "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees." Ellis v. Costco Wholesale Corp., 657 F.3d 970, 985 (9th Cir. 2011) (citations omitted).

At this stage, the Court is satisfied with Plaintiffs' demonstration that they will adequately represent the class.

### 5. Predominance

"[T]he focus of the Rule 23(b)(3) predominance inquiry is on the balance between individual and common issues." Alberto v. GMRI, Inc., 252 F.R.D. 652, 663 (E.D. Cal. 2008). Where common questions present a significant aspect of the case and are able to be resolved for all class members in a single action, the case can be handled on a representative rather than

1  individual basis.  <u>Alberto</u>, 252 F.R.D. at 663.

2  In this case, Plaintiff contends that all class members share a common nucleus of facts, but Plaintiff's boilerplate motion fails to undertake any effort to demonstrate how.  As discussed above, Plaintiff has not submitted any admissible evidence regarding the details of his claims.  However, the Court is satisfied at this preliminary stage that the receipt issue is common to the class, given the nature of the issue suggests a widespread issue pertaining to the credit card machine and the receipt printer.  The Court expects the parties to submit admissible evidence establishing predominance upon final settlement.

### 6. <u>Superiority</u>

Rule 23(b)(3) provides that courts should consider "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."  Where the parties have agreed to pre-certification settlement (D) and perhaps (C) are irrelevant.  <u>Amchem</u>, 521 U.S. at 620.

Plaintiffs argue that a class action is a superior method of adjudicating the claims because each individual claim is for a small amount and would be uneconomical to prosecute on an individual basis.  The Court is satisfied at this stage that the superiority factor weighs in favor of certifying a class action.

### B. **Whether the Proposed Settlement is Fundamentally Fair, Adequate, and Reasonable**

Plaintiffs must demonstrate that the proposed settlement is fundamentally fair, adequate, and reasonable.  <u>Hanlon</u>, 150 F.3d at 1026 (citing <u>Class Plaintiffs v. City of Seattle</u>, 955 F.2d 1268, 1276 (9th Cir. 1992)).  "Assessing a settlement proposal requires the district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant;

and the reaction of the class members to the proposed settlement." Hanlon, 150 F.3d at 1026 (citing Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1375 (9th Cir. 1993)).

When the settlement takes place before formal class certification, as it has in this instance, settlement approval requires a "higher standard of fairness." Lane v. Facebook, Inc., 696 F.3d 811, 819 (9th Cir. 2012) (quoting Hanlon, 150 F.3d at 1026). This more exacting review of class settlements reached before formal class certification is required to ensure that the class representatives and their counsel do not receive a disproportionate benefit "at the expense of the unnamed plaintiffs who class counsel had a duty to represent." Id.

### 1. Terms of the Settlement Agreement

Under the settlement, an $185,000 gross settlement fund would be established. The funds would be allocated as follows:

- $55,500 in attorney's fees (30%)
- $24,000 in claims administration fees
- $10,000 in attorney costs
- $5,000 class representative enhancement
- $90,500 for distribution to class members

The $90,500 amount will be distributed evenly between class members who submit a valid claim, but no class member may receive more than $250.00. Any unclaimed funds will be donated to the Boys and Girls Club of Huron.

Defendant has also agreed to remedy its practices pertaining to the printing of credit card receipts.

### 2. Fairness of Settlement, Generally

"To determine whether a settlement falls within the range of possible approval, a court must focus on substantive fairness and adequacy, and "consider plaintiffs' expected recovery balanced against the value of the settlement offer." Lusby v. Gamestop, Inc., 297 F.R.D. 400, 415 (N.D. Cal. 2013) (quoting In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)). "If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential

treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing." In re Tableware Antitrust Litigation, 484 F. Supp. 2d at 1079 (quoting Manual for Complex Litigation, Second § 30.44 (1985)).

Under FACTA, monetary damages are available against an entity who "willfully fails to comply" with FACTA. 15 U.S.C. § 1681n(a). Damages recoverable are either "actual damages sustained by the consumer," or "damages of not less than $100 and not more than $1,000." 15 U.S.C. § 1681n(a)(1)(A). Punitive damages are also available for willful violations. 15 U.S.C. § 1681n(a)(2). For negligent violations, actual damages are recoverable but not statutory or punitive damages. 15 U.S.C. § 1681o(a).

The parties estimate that 281,242 allegedly defective receipts were printed during the time period at issue in this action. Accordingly, assuming a willful violation is established, damages would range from $28,124,200 to $281,242,000, plus any punitive damages.

The Court finds that the settlement fund is fair and reasonable in light of the strength of Plaintiffs' case and the risk, expense, complexity, and likely duration of further litigation. Notably, Defendant contends that no willful violation can be established because Defendant was unaware of any defect in the receipts, and that it had contracted with a third party, third party defendant Springer-Miller Systems, Inc. to install its point of sale systems and Springer-Miller had made representations to Defendant that its system was legally compliant.

However, while the Court is preliminarily satisfied with the fairness of the settlement, several issues must be addressed by the parties prior to final approval of the settlement, which the Court discussed below.

### 3. Class Representative Enhancement

The settlement provides for a $5,000.00 class representative enhancement. The Court is unsatisfied with the justification provided for this amount. See Murray v. GMAC Mortg. Corp., 434 F.3d 948, 952 (7th Cir. 2006) (disapproving $3,000 payment to class representative in FACTA class action); Reibstein v. Rite Aid Corp., 761 F. Supp. 2d 241, 257 (E.D. Penn. 2011) (disapproving $3,750 payment to class representative in FACTA class action).

In assessing the appropriateness of class representative enhancements or incentive payments, the Court must consider factors such as the actions plaintiff took to protect the interests of the class, the degree to which the class has benefitted, the amount of time and effort the plaintiff expended in pursuing litigation, and any notoriety or personal difficulties encountered by the representative plaintiff. Khanna v. Intercon Sec. Systems, Inc., No. 2:09-cv-2214 KJM EFB, 2014 WL 1379861, at *10 (E.D. Cal. Apr. 8, 2014); Reibstein v. Rite Aid Corp., 761 F. Supp. 2d 241, 257 (E.D. Penn. 2011); see also Staton v. Boeing Co., 327 F.3d 938, 975-77 (9th Cir. 2003).

Here, Plaintiffs presented no evidence pertaining to Plaintiff Gonzalez which would justify an enhancement or incentive payment. There appears to be no risk of retaliation, given the nature of this case. There is no indication that Plaintiff Gonzalez's claims were substantially stronger than those of the rest of the class or that he suffered greater damages than the average class member. There is no indication that Plaintiff Gonzalez expended any substantial time or effort litigation this case. Accordingly, the settlement appears to impermissibly reward Plaintiff Gonzalez for "bringing [a] case[] as [a] class action principally to increase [his] own leverage to attain a remunerative settlement for [himself] and then trading on that leverage in the course of negotiations." Staton, 327 F.3d at 976.

Accordingly, while the Court preliminarily approves this settlement, the Court forewarns the parties that on final approval, the Court expects the parties to bring forth persuasive justification for Plaintiff Gonzalez's enhancement, or eliminate the enhancement from the settlement entirely.

### 4. Attorney's Fees and Costs

The settlement provides that 30% of the settlement fund be paid as attorney's fees. Additionally, $10,000 is allocated from the settlement fund for attorney costs.

In the Ninth Circuit, courts typically calculate 25% of the common fund as the "benchmark" for a reasonable fee award providing adequate explanation in the record for any special circumstances that justify departure. In re Bluetooth Headset Products Liability Litigation, 654 F.3d 935, 942 (9th Cir. 2011). The usual range for common fund attorney fees

1  are between 20-30%.  Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002).

2        Plaintiffs have submitted no evidence regarding the justification for $10,000 in costs.
3  Notably, this cost figure is apparently separate from the costs associated with administering the
4  settlement.  Plaintiffs are forewarned that, on final settlement, the Court will not approve the
5  payment of any costs without evidence itemizing those costs.

6        Plaintiffs have not submitted evidence justifying an upward departure from the 25%
7  "benchmark" for a reasonable fee award.  Plaintiffs are forewarned that the Court will not grant
8  an upward departure from the 25% "benchmark" for a reasonable fee award unless, at final
9  settlement, Plaintiffs present compelling evidence supporting such a departure.  This case
10 appears to be relatively straight forward case and lacks a complexity which may justify a higher
11 than benchmark rate.  However, counsel can and should show otherwise at the final settlement
12 proceeding if a greater rate is sought.

13       5.      <u>Designated Charities</u>

14       The settlement provides that unclaimed funds will be donated to the Boys and Girls Club
15 of Huron.  Since most class action settlements result in unclaimed funds a plan is required for
16 distributing the unclaimed funds.  Six Mexican Workers v. Arizona Citrus Growers, 904 F.2d
17 1301, 1305 (9th Cir. 1990).  The alternatives available are cy pres distribution, escheat to the
18 government, and reversion to the defendants.  Six Mexican Workers, 904 F.2d at 1307.

19       "Cy pres" distribution allows the distribution of unclaimed funds to indirectly benefit the
20 entire class.  Id. at 1305.  This requires the cy pres award to qualify as "the next best
21 distribution" to giving the funds directly to the class members.  Dennis v. Kellogg Co., 697 F.3d
22 858, 865 (9th Cir. 2012).  "Not just any worthy charity will qualify as an appropriate cy pres
23 beneficiary[,]" there must be "a driving nexus between the plaintiff class and the cy pres
24 beneficiary."  Dennis, 697 F.3d at 865 (quoting Nachshin v. AOL, LLC, 663 F.3d 1034, (9th Cir.
25 2011)).  The choice of distribution options should be guided by the objective of the underlying
26 statute and the interests of the class members.  Six Mexican Workers, 904 F.2d at 1307.

27       In this case, it is unclear how the objective of FACTA or the interests of the class
28 members is related to the Boys and Girls Club of Huron.  Plaintiffs indicate that the Boys and

Girls Club of Huron is a charitable child advocacy program. While it is a worthy charity, it is unclear how it is related to this action. Accordingly, at final settlement, the Court will require the parties to select alternative beneficiaries or demonstrate some nexus between the Boys and Girls Club of Huron and this action.

## IV.

## CONCLUSION AND RECOMMENDATION

Based upon the foregoing, the Court finds that preliminary approval of the proposed class action settlement is appropriate, with the expectation that the parties will address the issues identified herein when they request final approval.

Accordingly, it is HEREBY ORDERED that the hearing set for February 25, 2015 at 10:00 a.m in Courtroom 9 (SAB) before United States Magistrate Judge Stanley A. Boone is VACATED.

Further, it is HEREBY RECOMMENDED that:

1. The motion for preliminary approval of the proposed settlement be GRANTED;

2. The following class be CERTIFIED for settlement purposes only:

> [A]ll "consumers", as that term is defined in 15 U.S.C. §1681a(c), to whom Defendant provided an electronically printed credit or debit card receipt between December 4, 2008 and December 4, 2013 at the point of sale or transaction on which Defendant printed the expiration date(s) of the consumer's credit card or debit card number

3. The Court find that, for purposes of the Settlement, the above-defined Settlement Class meets all of the requirements for class certification. For purposes of the Settlement, the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3) are satisfied;

4. Plaintiff Jose Gonzalez be appointed as the Class Representative for the Settlement Class;

5. Kenneth S. Gaines, Daniel F. Gaines, and Alex P. Katofsky of Gaines & Gaines, APLC be appointed as Class Counsel for the Settlement Class;

6. The proposed language and manner of distributing the notice of settlement be

       approved as the best notice practicable under the circumstances; and

7.     The Court set a final approval and fairness hearing and schedule based upon the schedule set forth in the motion for preliminary approval;

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within fourteen (14) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **February 23, 2015**

                                                UNITED STATES MAGISTRATE JUDGE