# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE GONZALEZ, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>HARRIS RANCH BEEF COMPANY, et al.,<br><br>　　　　Defendants. | Case No.  1:14-cv-00038-LJO-SAB<br><br>FINDINGS AND RECOMMENDATIONS THAT MOTION FOR FINAL APPROVAL AND MOTION FOR ATTORNEYS' FEES BE DENIED<br><br>ECF NO. 64, 68<br><br>OBJECTIONS DUE WITHIN FOURTEEN (14) DAYS |

On July 31, 2015, Plaintiff Jose Gonzalez ("Plaintiff") filed a motion for final approval of class settlement.  (ECF No. 68.)  Plaintiff filed a motion for attorney's fees on April 3, 2015.  (ECF No. 64.)

The hearing on Plaintiff's motions took place on August 19, 2015.  Daniel Gaines appeared on behalf of Plaintiff and the class.  Oliver Wanger appeared on behalf of Defendant Harris Farms, Inc. ("Defendant").  For the reasons set forth below, the Court finds that Plaintiffs' motions be denied.

**I.**

**BACKGROUND**

Plaintiff initiated this action on December 4, 2013 in the Superior Court of California for the County of Fresno.  The action was removed to this Court on January 10, 2014.  (ECF No. 2.)

1

Plaintiff brought suit against Defendant on behalf of himself and others similarly situated. Plaintiff brought suit under the Fair and Accurate Credit Transaction Act ("FACTA"), alleging that Defendant printed the credit card and debit card expiration dates on customers' receipts for purchases made at Defendant's restaurant and country store in Coalinga, California.

Plaintiff filed a motion for preliminary approval of the class action settlement on January 21, 2015. (ECF No. 58.) On March 25, 2015, the motion for preliminary approval was granted. (ECF No. 63.) On April 3, 2015, Plaintiffs filed a motion for attorney fees. (ECF No. 64.) On July 31, 2015, Plaintiffs filed a motion for final approval. (ECF No. 68.)

The settlement class is defined as:

> All "consumers," as that term is defined in 15 U.S.C. § 1681a(c), to whom Defendant provided an electronically printed credit or debit card receipt between December 4, 2008 and December 4, 2013 at the point of sale or transaction on which Defendant printed the expiration date(s) of the consumer's credit card or debit card number.

The settlement requires Defendant to pay out a total of $185,000. After costs and attorneys' fees are deducted from this sum, the remaining amount will be available for distribution on a pro rata basis to class members, subject to each class member receiving a maximum of $250. In this case, 23 claims have been received. Accordingly, the settlement funds are proposed to be distributed as follows:

| | |
|---|---|
| Attorneys' Fees (30%): | $55,000.00 |
| Litigation Costs: | $10,000.00 |
| Settlement Administration: | $24,000.00 |
| Plaintiff Enhancement: | $5,000.00 |
| Class Member Distribution: | $5,750.00 |
| Cy Pres Distribution: | $85,250.00 |

Plaintiffs provided notice of the settlement via website, two newspapers (the Fresno Bee and the San Francisco Chronicle), and a notice placed at the cash registers at Defendant's store in Coalinga, California. Plaintiffs received no objections or opt-outs from the settlement.

///

## II.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 23(e) states:

> (e) Settlement, Voluntary Dismissal, or Compromise. The claims, issues or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:
> (1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
> (2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.
> (3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.
> (4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.
> (5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

Rule 23 "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998) (citing Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992)). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." Id. (citing Officers for Justice v. Civil Serv. Comm'n of San Francisco, 688 F.2d 615, 628 (9th Cir. 1982)).

"Assessing a settlement proposal requires the district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." Hanlon, 150 F.3d at 1026 (citing Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1375 (9th Cir. 1993)). "To survive appellate review, the district court must show it has explored comprehensively all factors." Id.

Moreover:

> Several circuits have held that settlement approval that takes place prior to formal class certification requires a higher standard of fairness. The dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court designated class representative, weigh in favor of a more probing inquiry than may normally be required under Rule 23(e).... Because settlement class actions present unique due process concerns for absent class members, we agree with our sister circuits and adopt this standard as our own.

Hanlon, 150 F.3d at 1026.

## III.

## DISCUSSION

### A.  Rule 23 Requirements for Class Certification and Final Approval

In the Court's previous order on preliminary approval of the class action settlement, the Court raised issue with whether Plaintiffs made an adequate evidentiary showing with respect to the class certification requirements in Federal Rule of Civil Procedure 23. The Court was satisfied with Plaintiffs demonstration of the Federal Rule of Civil Procedure 23(a) requirements of typicality and adequacy of representation, but identified a potential issue with numerosity and commonality.

With respect to numerosity and commonality, the Court took issue with the fact that Plaintiffs previously attempted to establish numerosity and commonality via a declaration from their attorney regarding the number of defective receipts printed at Defendant's store during the relevant time period and the nature of the defect in Defendant's credit card processing and receipt printing system. The Court noted that it was not clear how Plaintiffs' attorney would have personal knowledge of these facts. Plaintiffs have since submitted a declaration from William Bourdeau, Defendant's vice president, testifying as to Defendant's business practices and records regarding the number of defective receipts. Accordingly, the Court finds that the proposed settlement satisfies the Rule 23(a) requirements of (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.

/ / /

The Court further finds that the proposed class meets the predominance and superiority requirements of Rule 23(b)(3). The Court previously expressed reservations regarding the predominance requirement, as Plaintiff had not submitted admissible evidence showing that all class members share a common nucleus of facts. However, the declaration of Mr. Bourdeau addresses this issue. Accordingly, the Court finds that Plaintiffs have made an adequate showing that the Rule 23 requirements have been met in this action.

**B.     Whether the Settlement is Fundamentally Fair, Adequate, and Reasonable**

In the Court's prior order on preliminary approval, the Court raised several issues with respect to whether the settlement is fundamentally fair, adequate, and reasonable. For the reasons set forth below, the Court finds that Plaintiffs have not adequately addressed these issues.

1.     Plaintiff Enhancement of $5,000.00

The Court previously raised an issue regarding the appropriateness of the $5,000.00 enhancement to be paid to Plaintiff Jose Gonzalez. At the preliminary approval stage, the Court found that Plaintiffs have not submitted sufficient evidence demonstrating that such an enhancement award was justified. Plaintiffs have not submitted any new or different evidence or argument on this issue.

"Generally, when a person 'join[s] in bringing [an] action as a class action ... he has disclaimed any right to a preferred position in the settlement.'" Staton v. Boeing Co., 327 F.3d 938, 976 (9th Cir. 2003) (quoting Officers for Justice v. Civil Service Com'n of City and County of San Francisco, 688 F.2d 615, 632 (9th Cir. 1982)). "Were that not the case, there would be considerable danger of individuals bringing cases as class actions principally to increase their own leverage to attain a remunerative settlement for themselves and then trading on that leverage in the course of negotiations." Id. However, "incentive fees" or "enhancement awards" are permissible to compensate named plaintiffs for the risks they take and their vanguard role in a class action. Id.

In assessing the appropriateness of class representative enhancements or incentive payments, the Court must consider factors such as the actions plaintiff took to protect the

5

interests of the class, the degree to which the class has benefitted, the amount of time and effort the plaintiff expended in pursuing litigation, and any notoriety or personal difficulties encountered by the representative plaintiff. Khanna v. Intercon Sec. Systems, Inc., No. 2:09-cv-2214 KJM EFB, 2014 WL 1379861, at *10 (E.D. Cal. Apr. 8, 2014); Reibstein v. Rite Aid Corp., 761 F. Supp. 2d 241, 257 (E.D. Penn. 2011); see also Staton v. Boeing Co., 327 F.3d 938, 975-77 (9th Cir. 2003).

These factors do not exist in this case to a degree which would justify the $5,000.00 enhancement award proposed in the settlement agreement. Plaintiffs have not identified any substantial action Plaintiff Gonzalez took to protect the interests of the class. Plaintiffs have not identified any substantial benefit enjoyed by the class which resulted from Plaintiff Gonzalez's actions. Plaintiffs have not identified substantial time or effort Plaintiff Gonzalez expended in pursuing litigation. Plaintiffs have not identified any plausible risks of notoriety or personal difficulties encountered by Plaintiff Gonzalez.

In the Court's order on preliminary approval, the Court noted that Plaintiffs had not presented any evidence pertaining to Plaintiff Gonzalez that would justify an enhancement. The motion for final approval does not do enough to address the issue raised by the Court at preliminary approval. Plaintiffs submit a declaration from Plaintiff Gonzalez reiterating that Plaintiff provided factual information to his attorneys, assisted in discovery and settlement, and traveled from Los Angeles to Sacramento for a mediation session. Aside from the travel expenses associated with the mediation, none of the described activities appear to justify an enhancement award. No detail is provided suggesting that Plaintiff Gonzalez's contributions to the case were particularly time consuming or burdensome. Plaintiff Gonzalez estimates that he spent approximately 25 hours, inclusive of travel, assisting his attorneys. The Court finds that 25 hours spent contributing to this litigation is relatively low for a plaintiff, particularly when the vast majority of that time is attributable to a single mediation session Plaintiff traveled to in Sacramento from out of town. In the Court's experience, it is less than the average party would invest in any litigation, including non-class actions. Moreover, awarding an enhancement fee based upon Plaintiff's Gonzalez's travel expenses would essentially amount to double-counting,

as Plaintiffs requested reimbursement for Mr. Gonzalez's travel expenses in their itemized statement of costs.

Mr. Gonzalez also states in his declaration that his pursuit of this lawsuit will likely "result in future reputational harm." The Court is skeptical of this contention. Unlike an employment discrimination action which can damage an employee's future job prospects with other employers, it is unlikely that a lawsuit under FACTA will have any impact on Plaintiff's reputation or any impact on Plaintiff's ability to shop at other retailers. It is difficult to imagine why anyone would care one way or another that Plaintiff Gonzalez sued a retailer for a violation of FACTA involving the printing of expiration dates on credit card receipts. Moreover, unlike other lawsuits where an individual can be identified based upon the facts alleged, this lawsuit is brought by a plaintiff whose anonymity is protected by the fact that the complaint only alleges that he, at some point in time, shopped at a Harris Farms store. It is highly unlikely that anybody meeting Mr. Gonzalez in the future would be able to identify Mr. Gonzalez as <u>the</u> Jose Gonzalez that sued Defendant Harris Farms, Inc. for FACTA violations, particularly in light of the fact that "Jose Gonzalez" is a fairly common name.

Furthermore, as discussed in more detail below, the extremely low number of class members who filed claims (23) raises further concerns on whether a class enhancement is appropriate. It appears that the individuals benefitting the most from this settlement are Plaintiff Gonzalez and his attorneys, rather than the class as a whole. Accordingly, the Court will not approve the requested enhancement. Given the small role Plaintiff Gonzalez played in this litigation and the modest benefit enjoyed by the actual members of the class, a smaller enhancement award, such as $2,500.00, would be more appropriate in this case.

2. <u>Requested Attorneys' Fees and Costs</u>

The Court also previously raised an issue regarding the appropriateness of the requested attorneys' fees. At the preliminary approval stage, the Court found that Plaintiffs have not submitted sufficient evidence demonstrating that a 30% attorney fee award ($55,000.00) or $10,000 in costs were justified. For the reasons set forth below, the Court finds that Plaintiffs have not adequately addressed these issues.

1      At preliminary approval, the Court noted that Plaintiffs had not submitted any evidence
2 of $10,000.00 in costs that should be reimbursed through the settlement. The Court ordered
3 Plaintiffs to provide itemized evidence of costs at final approval. Plaintiffs have submitted an
4 itemization of their costs, which shows that the $10,000 in requested costs is actually $3,854.05
5 less than the amount of costs actually incurred.

6      At preliminary approval, the Court also raised issue with the request for 30% in
7 attorneys' fees. The Court noted that in the Ninth Circuit, 25% of the common fund is the
8 "benchmark" for a reasonable fee. See In re Bluetooth Headset Products Liability Litigation,
9 654 F.3d 935, 942 (9th Cir. 2011). The Court found that Plaintiffs had not submitted evidence
10 justifying an upward departure from the 25% "benchmark."

11      Plaintiffs argue that a 30% award is commonly awarded in this Court and other courts in
12 the state. This contention conflicts with the Ninth Circuit's characterization of 25% as being the
13 "benchmark" for a reasonable fee. For the reasons discussed in more detail below, given the
14 modest benefit received by individual members of the class and the relatively small amount of
15 work this case entailed, if the circumstances of this case did not warrant a "benchmark" attorney
16 fee award, it is unclear when the 25% "benchmark" fee would be appropriate if not in this case.

17      Plaintiffs argue that a 30% fee award is supported by a "lodestar" crosscheck. Plaintiffs
18 calculate the lodestar to be $74,480 based upon 168.5 hours of attorney work at a rate between
19 $175 per hour to $400 per hour.

20      However, the lodestar crosscheck is not the only factor considered by the Court. The
21 25% benchmark may be adjusted upward or downward based on other factors, such as 1) the
22 results achieved, 2) the risk of litigation, 3) the skill required, 4) the quality of work, 5) the
23 contingent nature of the fee and the financial burden, and 6) awards made in similar cases.
24 Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048-50 (9th Cir. 2002).

25      Unlike Vizcaino, the Court finds that Plaintiffs' counsel did not achieve "exceptional
26 results" for the class. The Court is particularly troubled by the fact that the class notice devised
27 by Plaintiffs' counsel only yielded 23 responses from a class that was estimated to include more
28 than 100,000 members. A mere 23 people will be compensated for an injury alleged to have

been suffered by more than 100,000 people and the terms of settlement would foreclose any further legal redress to the people who have not filed claims. Better results could have possibly been achieved by more creative forms of notice. Assuming Defendant has some degree of web presence, notice could be sent to e-mail addresses subscribed to Defendant's newsletters or members of any social networking groups organized by Defendant. Plaintiffs could have attempted to coordinate with credit card companies or credit card processing companies to determine if individualized contact information could be obtained based upon Defendant's purchasing records. While the Court appreciates Plaintiffs' argument that more elaborate notice efforts may not have been justified or feasible given the small settlement fund, any financial limitation in providing notice to other class members is the result of the modest result achieved by Plaintiffs' counsel, which only further reinforces the Court's analysis and conclusion that an upward departure from the 25% benchmark does not appear to be warranted on the facts of this case.

Further, there appears to have been no great risk of litigation. While the Court acknowledges that whether a "willful" violation of FACTA occurred likely would have been contested and statutory damage awards are limited to "willful" violations, see 15 U.S.C. § 1681n(a)(1)(A), the existence of at least a negligent violation of FACTA was generally undisputed. Accordingly, any risk borne by Plaintiffs is mitigated by the fact that Plaintiffs would have recovered any costs and attorney's fees by proving a negligent violation of FACTA. See 15 U.S.C. § 1681o(a)(2). Given Plaintiffs' "conservative" lodestar calculation of $74,480 in attorneys' fees accrued without going to trial, the $185,000 settlement could be viewed largely as a nuisance value. Thus, the "results achieved" do not appear to be exceptional or warrant an upward departure from the 25% benchmark.

The remaining factors do not justify an upward departure from the 25% benchmark. Nothing in this litigation appears to have required an extraordinary degree of skill or quality of work—as discussed above, settlement appears to have been achieved simply by reason of an undisputed violation of FACTA which would have been proven relatively easily simply by producing copies of credit card receipts with expiration dates printed on them. Plaintiffs argue

that proving a "willful" violation of FACTA would have been difficult and required great skill, expertise, and high quality work. However, any skill or expertise necessary to prove a "willful" violation and any risks associated with proving a "willful" violation appears to be inconsequential to the results achieved here. No "willful" violation was proven in this case and the settlement amount appears to indicate that the case for proving a "willful" violation was weak.[1] Plaintiffs make no other arguments justifying an upward departure.

Based upon the foregoing, the Court finds that the 30% allocation for attorneys' fees is not justified and therefore the class settlement is not fundamentally fair, adequate, and reasonable.

### 3. Designated Cy Pres Charity

The Court also previously raised an issue regarding the appropriateness of the designated cy pres charity. At the preliminary approval stage, the Court found that Plaintiffs had not demonstrated an adequate nexus between the legal claims raised in this action and the Boys and Girls Club of Huron.

"[T]he 'cy pres doctrine allows a court to distribute unclaimed or non-distributable portions of a class action settlement fund to the "next best" class of beneficiaries.'" Lane v. Facebook, Inc., 696 F.3d 811, 819 (9th Cir. 2012) (quoting Nachshin v. AOL, LLC, 663 F.3d 1034, 1036 (9th Cir. 2011). "For purposes of the *cy pres* doctrine, a class-action settlement fund is 'non-distributable' when 'the proof of individual claims would be burdensome or distribution of damages costly.'" Id. (quoting Nachshin, 663 F.3d at 1038). "[T]he court should not find the settlement fair, adequate, and reasonable unless the cy pres remedy 'account[s] for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members....'" Id. (quoting Nachshin, 663 F.3d at 1036).

Plaintiffs submit evidence from Diane Carbray, executive director and chief financial officer of the Boys & Girls Club of Fresno County indicating that the Boys & Girls Club of

---

[1] As discussed in the order on preliminary approval, a "willful" violation would have yielded damages ranging from $100-$1,000 per violation. 15 U.S.C. § 1681n(a)(1)(A). With 281,242 violations alleged, the minimum damages for a willful violation would have been $28,124,200—much greater than the common fund amount achieved via settlement in this case.

Huron provides educational training to members of the community which includes a "Money Matters" program which promotes financial responsibility and independence. The Court notes that Huron, California is geographically close to the location of Defendant's store in Coalinga, California. The "Money Matters" program pursues similar objectives as FACTA, as they both promote consumer protection. The Court is satisfied with the nexus between this action and the designated cy pres charity.

## IV.

## CONCLUSION AND RECOMMENDATION

Based upon the foregoing, the Court finds that the proposed class settlement is not fundamentally fair, adequate, and reasonable. Specifically, the Court finds that the proposed Plaintiff enhancement award of $5,000.00 and the proposed attorney fee award of 30% are not warranted. Accordingly, the Court will recommend that final approval be denied without prejudice to Plaintiffs' ability to refile a motion for final approval based on different terms or to request additional time to explore other, more effective, options for providing class notice and re-opening the claims period.

Accordingly, it is HEREBY RECOMMENDED that Plaintiff's motion for attorneys' fees and motion for final approval be DENIED, without prejudice.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within fourteen (14) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28

//
//
//
//
//

U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **August 19, 2015**

UNITED STATES MAGISTRATE JUDGE